CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 22, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES KENZELL CARTER, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>S. SMITH, *et al.*, )<br>    Defendants. ) | Civil Action No. 7:21-cv-00149<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Charles Kenzell Carter, an inmate in the custody of the Virginia Department of Corrections (VDOC) and proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 in March 2021. The original complaint named seven correctional officers as defendants, one of whom was later identified as S. Smith, a property officer at Wallens Ridge State Prison. (*See* Dkt. Nos. 1, 22.) Smith and the other defendants moved to dismiss the complaint for failure to state a claim. (Dkt. No. 32.) Several months later, Carter moved to voluntarily dismiss the case without prejudice on the basis that his legal materials had been destroyed. (Dkt. No. 47.) On July 29, 2022, the then-presiding district judge granted the motion, dismissed the case without prejudice, and denied all pending motions as moot. (Dkt. No. 48.) The judge retained jurisdiction over the case for 30 days, during which time Carter was permitted to file a motion to reopen the case. (*Id.*) Carter moved to reopen the case within the time permitted, and that motion was granted on September 6, 2023. (Dkt. No. 50.)

On November 8, 2023, the defendants filed a new motion to dismiss for failure to state a claim, and the clerk notified Carter that he had 21 days to respond to the motion. (Dkt. Nos. 55, 59.) Shortly after the 21-day period expired, Carter filed a motion for leave to amend the complaint in response to the defendants' motion to dismiss, along with a proposed amended

complaint that names Smith and the VDOC as the only defendants. (Dkt. No. 63.) Carter also filed a motion for extension of time in which he requests that the proposed amended complaint be filed as the operative pleading. (Dkt. No. 62.)

The case was transferred to the undersigned district judge on May 3, 2024. (Dkt. No. 68.) Having reviewed the record, the court will grant Carter's motions insofar as it will consider the proposed amended complaint to be the operative pleading in the case, rendering moot the motion to dismiss filed on November 8, 2023.[1] After screening the amended complaint pursuant to 28 U.S.C. § 1915A(a), the court concludes that Carter's federal claims must be dismissed for failure to state a claim upon which relief may be granted, and the court declines to exercise supplemental jurisdiction over any remaining claims under state law.

## I. BACKGROUND

In 2017, Carter entered a plea of no contest to a charge of second-degree murder in Wyoming state court. *See Carter v. State*, 406 P.3d 1231, 1232 (Wyo. 2017). The trial court sentenced Carter to a term of incarceration of 40 to 80 years. *Id.* Carter appealed his conviction and sentence to the Wyoming Supreme Court, and the judgment was affirmed on November 22, 2017. *Id.* Carter's efforts to collaterally attack his conviction have been unsuccessful. *See, e.g.*, *Carter v. Wyoming*, No. 23-8062, 2024 WL 2584666, at *1 (10th Cir. May 24, 2024) (denying a certificate of appealability to challenge the dismissal of a petition for writ of habeas corpus under 28 U.S.C. § 2254).

Carter is serving his sentence in the custody of the VDOC pursuant to an Interstate Corrections Compact (ICC) agreement between the Commonwealth of Virginia and the State of

---

[1] An amended complaint "supersedes an initial complaint and renders it 'of no effect.'" *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 241 (4th Cir. 2019) (quoting *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017)).

Wyoming. (Am. Compl. 2.) He initially entered into the custody of the VDOC in August 2019. (*Id.*) Prison officials in Wyoming inventoried his personal property prior to the transfer, and the property was inventoried again after Carter arrived at Nottoway Correctional Center. (*Id.* at 3.) The items documented on the inventory lists included 36 compact discs (CDs) containing Carter's "criminal discovery material," a television with a remote, sunglasses, pencils, hair grease, hot sauce, arts and crafts, colored folders, and other personal items. (*Id.*)

On September 23, 2019, Carter was transferred to Wallens Ridge State Prison, where his property was inventoried by defendant Smith. Smith informed him that he was not allowed to possess certain items in his cell, including the CDs containing legal materials, and that such items would be stored at Wallens Ridge while he was incarcerated there. (*Id.* at 4.) Carter alleges that Smith did not "forward [the] CDs to intel" in accordance with the applicable VDOC policy and that he was not permitted to review the legal materials at any time during his period of incarceration at Wallens Ridge. (*Id.*)

On June 26, 2020, Carter was moved to Red Onion State Prison. Approximately two weeks later, he received a property inventory list that included the items that would be stored for him while he was incarcerated there. (*Id.* at 5.) The list did not mention the CDs, hair grease, hot sauce, arts and crafts, or colored folders that had been inventoried at Wallens Ridge. (*Id.* at 6.) When Carter filed an informal complaint regarding the property missing from the list, a correctional official at Red Onion instructed him to contact Wallens Ridge. Although he wrote Wallens Ridge between July 14, 2020, and July 18, 2020, he did not receive a response. (*Id.*)

During that time period, Carter was "in the process of seeking relief [from his] criminal conviction." (*Id.*) Carter asserts that the CDs contained evidence that he planned to use in support of a petition for writ of habeas corpus, including "autopsy information, transcripts, [and]

3

witness statements." (*Id.*) He alleges that he was not aware of the autopsy photos until "after trial" and that they showed "wounds on the victim" that were "not documented." (*Id.* at 7.) Carter claims that the "new evidence" was "material and in [his] favor," and that he could not successfully challenge his conviction without having access to the information stored on the CDs. (*Id.* at 12–13.)

As noted above, the amended complaint names only two defendants: Smith and the VDOC. (*Id.* at 1.) Carter identifies Smith as a "property officer, supervisor at Wallens Ridge" and states that Smith is "sued in her individual and official capacity." (*Id.* at 2.) In a section of the amended complaint titled "Claims for Relief," Carter lists nine claims or groups of claims. The claims are summarized as follows:

> **Claims 1 and 3**: Smith and the VDOC deprived Carter of his property without due process in violation of the Fourteenth Amendment by failing to properly process his legal CDs in accordance with the applicable VDOC policy.
>
> **Claim 2**: Smith deprived Carter of his right to access the courts under the First and Fourteenth Amendments by failing to properly process his legal CDs.
>
> **Claim 4:** Smith deprived Carter of his rights under the Fourth Amendment and Virginia law by seizing his legal materials.
>
> **Claim 5:** Smith acted with willful and wanton negligence by failing to properly handle Carter's legal materials.
>
> **Claim 6**: Smith and the VDOC deprived Carter of his right to due process under Article I, Section 11 of the Virginia Constitution.
>
> **Claim 7**: Smith negligently inflicted emotional distress on Carter by causing his legal materials to be lost or destroyed.
>
> **Claim 8**: Smith and the VDOC violated the Fourteenth Amendment, the Eighth Amendment, and Virginia law by depriving Carter of a liberty interest created by the Interstate Corrections Compact.

> **Claim 9:** Carter asserts a catch-all claim covering "[a]ny and all claims, cases, and arguments not specifically and/or artfully raised in [the] amended complaint."

(*Id.* at 13–16.)  At the conclusion of the amended complaint, Carter requests $30,000 in compensatory and punitive damages for "loss of liberty" and "distress."  (*Id.* at 16–17.)  He also seeks the return of his property or its replacement value and an injunction directing the VDOC to immediately return him to the custody of the Wyoming Department of Corrections.  (*Id.* at 17.)

## II.  DISCUSSION

**A.  Standard of Review**

Pursuant to 28 U.S.C. § 1915A(a), the court is required to conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  On review, the court must "dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(b).

To withstand dismissal for failure to state a claim, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To satisfy this requirement, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Pleadings filed by *pro se* litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Nonetheless, a complaint filed by a *pro se* plaintiff "must still 'state a claim to relief that is plausible on its face.'"  *Sakyi v. Nationstar Mortg., LLC*, 770 F. App'x 113, 113 (4th Cir. 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir.

5

2014)). Applying these standards to Carter's amended complaint, the court concludes that it fails to state a claim for relief under federal law against either of the named defendants.

## B. Availability of Relief under Section 1983

As an initial matter, any claim asserted against the VDOC under 42 U.S.C. § 1983 must be dismissed because a state agency is not a "person" subject to liability under the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The same is true for any claims for damages under § 1983 against defendant Smith in her official capacity. *Id.*; *see also Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) ("[W]hereas 42 U.S.C. § 1983 permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief."). Accordingly, these claims must be dismissed.

## C. Fourteenth Amendment Due Process Claims

In Claims 1, 3, and 8, Carter alleges that Smith violated his right to due process under the Fourteenth Amendment. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

### 1. Claims for Deprivation of Property (Claims 1 and 3)

To the extent that Carter claims that he was deprived of his property without due process, he has failed to state a claim for which relief may be granted. Allegations that a prison official improperly deprived an inmate of his property, whether intentionally or as a result of negligence,

do not state a Fourteenth Amendment due process claim "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Under the Virginia Tort Claims Act (VTCA), the Commonwealth of Virginia has waived sovereign immunity for claims for damages arising from "damage to or loss of property . . . caused by the negligent or wrongful act or omission of any [state] employee while acting within the scope of their employment." Va. Code Ann. § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the VTCA and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. *See Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985). Because adequate post-deprivation remedies exist under state law, Carter has no viable claim for deprivation of property in violation of the Fourteenth Amendment. Thus, Claims 1 and 3 must be dismissed.

**2. Claim for Deprivation of a Liberty Interest (Claim 8)**

In Claim 8, Carter asserts that he was deprived of a liberty interest created by the Interstate Corrections Compact (ICC). He alleges that the ICC "provides [him] with a state-created liberty interest concerning [his] legal rights" and that he was deprived of that interest as a result of the loss of access to his legal property. (Am. Compl. 8). He cites to a provision of the ICC adopted by the Commonwealth of Virginia and the State of Wyoming, which provides that "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." (*Id.* at 9 (citing Wyo. Stat. Ann. § 7-3-401, Art. IV(e); Va. Code Ann. § 53.1-216, Art. IV(e)).)

To establish the existence of a state-created liberty interest, a prison inmate must make a two-part showing. *Prieto*, 780 F.3d at 249. First, he must show that a state statute, regulation,

7

or policy "creates an 'objective expectation' in the liberty interest 'in such a way that an inmate could reasonably expect to enforce [it] against prison officials.'" *Desper v. Clarke*, 1 F.4th 236, 247 (4th Cir. 2021) (alteration in original) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 465 (1989)). "That objective expectation can be created by 'substantive predicates' that 'guide' or 'limit' official discretion and that use 'explicitly mandatory language' such that 'a particular outcome must follow' if those predicates are satisfied." *Id.* (quoting *Thompson*, 490 U.S. at 462–63); *see also Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993) ("[T]he regulation must create substantive predicates to guide the decisionmaker's discretion, such as specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.") Second, an inmate must "show that deviating from that procedure 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Desper*, 1 F.4th at 247 (alteration in original) (quoting *Sandin*, 515 U.S. at 484). "Satisfying these requirements is a difficult task, and intentionally so." *Id.*

Carter's amended complaint fails to satisfy either of these requirements. Although the ICC provision on which Carter relies preserves a transferred inmate's "legal rights," it does not define that term or indicate "how such rights—assuming they exist—may be enforced." *Trujillo v. Williams*, 465 F.3d 1210, 1224 (10th Cir. 2006). Nor does it include specific directives pertaining to a transferred inmate's legal property or the application of state policies and procedures applicable to such property. *See, e.g.*, *Petaway v. DiNitto*, No. 1:11-cv-00047, 2012 WL 2222204, at *4 n.6 (D.R.I. June 14, 2012) (noting that the ICC's "provision concerning preservation of 'legal rights' does not, because it cannot, encompass all of the sending state's policies and procedures" and that "nothing short of administrative chaos would ensue" if the

court "were to find that a sending state's policies and procedures established absolute 'legal rights' under the Compact").

Additionally, even if Carter could satisfy the first requirement, he has not alleged facts sufficient to satisfy the second requirement. His allegations regarding the denial of access to legal materials do not plausibly demonstrate that he faced "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Hill v. Chambers-Smith*, No. 22-3557, 2022 U.S. App. LEXIS 31708, at *4 (6th Cir. Nov. 16, 2022) (concluding that an inmate's restricted access to legal materials did not rise to the level of an atypical and significant hardship); *Blakely v. Jones*, 816 F. App'x 161, 161 (9th Cir. 2020) (concluding that an inmate failed to demonstrate that the confiscation of his legal property violated his substantive or procedural due process rights) (citing *Sandin*, 515 U.S. at 483–85); *Whitford v. Boglino*, No. 97-3715, 1999 U.S. App. LEXIS 26475, at *7 (7th Cir. Oct. 15, 1999) (holding that the confiscation of an inmate's law books and the denial of access to the law library while in disciplinary segregation did not rise to the level of an atypical and significant hardship); *Vigil v. Walrach*, No. 7:15-cv-00063, 2015 U.S. Dist. LEXIS 165361, at *8 (W.D. Va. Dec. 10, 2015) (holding that the denial of access to legal calls and property while housed in segregation did not rise to the level of an atypical and significant hardship). Consequently, Claim 8 fails to state a claim for which relief may be granted.

**B. Access-to-Courts Claim**

In Claim 2, Carter asserts that Smith deprived him of his federal constitutional right to access the courts by failing to "properly process [his] 36 legal CDs" and "make sure they were properly transferred." (Am. Compl. 13.) He alleges that his inability to access the CDs hindered his ability to present "new evidence" in a habeas proceeding challenging his conviction,

including autopsy photos of the victim's wounds. (*Id.* at 7, 13.)

State inmates "have a constitutionally protected right of access to the courts that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment." *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (internal quotation marks omitted); *see also Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995). To state such a claim, a plaintiff must plead facts showing that he suffered an "actual injury" as a result of the denial of access. *Lewis v. Casey*, 518 U.S. 343, 35 (1996); *see also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (explaining that a prisoner must "identify an actual injury" resulting from the denial of access and "cannot rely on conclusory allegations"). To satisfy the injury requirement, a plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim" that has been frustrated or impeded as a result of the defendant's actions. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quoting *Lewis*, 518 U.S. at 353 & n.3). Thus, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* The complaint must describe the underlying cause of action "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416.

Carter's amended complaint does not satisfy the injury requirement. Although Carter alleges that Smith's actions hindered his ability to collaterally attack his convictions, the amended complaint does not "specify facts demonstrating that the claims [he wished to pursue] were nonfrivolous." *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008) (concluding that the mere assertion that the plaintiffs "lost the opportunity to pursue attacks of their convictions" was insufficient to state a claim under *Harbury*). Carter's references to autopsy photos and other purportedly "new evidence" do not suffice. To the extent that Carter suggests that the evidence

10

could have been used to support a claim of actual innocence, neither the Supreme Court nor the Tenth Circuit has ever permitted federal habeas relief on a claim of actual innocence "based on newly discovered evidence . . . absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Farrar v. Raemisch*, 924 F.3d 1126, 1131 (10th Cir. 2019) ("We have thus held that actual innocence does not constitute a freestanding basis for habeas relief."). Carter's amended complaint does not identify any constitutional claim that could have been raised in conjunction with a claim of actual innocence, must less plausibly allege that "it is more likely than not that no reasonable juror would have convicted him" in light of all of the evidence, as is required to establish actual innocence. *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995); *see also Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2024) (noting that the *Schlup* standard is "demanding and permits review only in the extraordinary case") (internal quotation marks omitted). Because the amended complaint does not adequately plead an actual injury, it fails to state a claim for denial of access to the courts. *See Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1274 (11th Cir. 2010) (agreeing with the district court that an inmate's claim of actual innocence did not satisfy the actual injury requirement since there was "only a 'hope'" that the biological evidence to which the inmate was denied access "could provide sufficiently strong evidence of innocence to meet the demanding *Schlup* standard"). Consequently, Claim 2 will be dismissed.

**C. Fourth Amendment Claim**

As part of Claim 4, Carter alleges that Smith deprived him of his rights under the Fourth Amendment by seizing his legal materials. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, reasonable, or a

11

legitimate expectation of privacy that has been invaded by government action." *Hudson*, 468 U.S. at 525. While prisoners "enjoy many protections of the Constitution," *id.* at 524, the Supreme Court has held that they "have no legitimate expectation of privacy" in their cells, lockers, or personal effects, *id.* at 529–30. Consequently, "the Fourth Amendment does not protect an inmate from the seizure and destruction of his property." *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989); *see also Hudson*, 468 U.S. at 538 (O'Connor, J., concurring) ("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects, and therefore all searches and seizures of the contents of an inmate's cell are reasonable. The allegation that [the inmates'] property was destroyed without legitimate reason does not alter the Fourth Amendment analysis in these prison cases.") (internal citations omitted). Therefore, the Fourth Amendment claim asserted in Claim 4 will be dismissed.

### D. Eighth Amendment Claim

As part of Claim 8, Carter asserts that Smith's actions violated his rights under the Eighth Amendment. In the introduction section of the amended complaint, Carter states that he is seeking relief for "deliberate indifference to property" in violation of his "Eighth Amendment rights." (Am. Compl. 1.)

The Eighth Amendment's prohibition of cruel and unusual punishment "applies to claims by prisoners against corrections officials challenging conditions of confinement." *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019). "Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components." *Id.* (internal quotation marks omitted). To satisfy the objective component, a prisoner must set forth facts showing that the deprivation alleged was sufficiently serious. *Id.* "Only extreme deprivations" are sufficient to satisfy this component. *De'Lonta v. Angelone*,

330 F.3d 630, 634 (4th Cir. 2003). In particular, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions" or "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (internal quotation marks omitted). To satisfy the subjective component, an inmate must show that the prison official "actually kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is an "exacting standard" that is not met by a showing of "mere negligence or even civil recklessness." *Jackson*, 775 F.3d at 178.

Applying these standards, the court concludes that the amended complaint fails state a plausible claim for relief under the Eighth Amendment. Although Carter alleges that he experienced emotional distress as a result of not being able to access his legal property, he does allege facts from which the court could reasonably infer that Smith actually knew of and disregarded an excessive risk to his health or safety. Therefore, the Eighth Amendment claim asserted as part of Claim 8 will be dismissed.

### E. Catch-all Claim

To the extent that Claim 9 seeks relief under § 1983 for any violations of federal law that are not specifically alleged in the amended complaint, such claim plainly fails to provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Accordingly, Claim 9 will be dismissed.

### F. Claims under State Law

Carter's amended complaint also asserts several claims under state law for which he requests that the court exercise supplemental jurisdiction. (*See* Am. Compl. 2 ("This court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.")). The court

has the discretion to decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Cohill*, 484 U.S. at 350.

Each of the applicable factors weighs in favor of declining to exercise supplemental jurisdiction over the remaining claims in this case. The only claims that remain are brought under state law and do not involve any underlying issues of federal policy. Moreover, because the case has not progressed past the pleading stage, dismissing the remaining claims without prejudice to being pursued in state court will not waste judicial resources or result in unfairness to either party.[2] Thus, having considered the applicable factors, the court declines to exercise supplemental jurisdiction over the remaining claims and will dismiss those claims without prejudice. *See Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendant state law claims by dismissing those claims without prejudice.").

---

[2] The court notes that the statute of limitations applicable to the claims asserted under state law was tolled during the pendency of this case and will remain tolled for 30 days after the case is dismissed unless state law provides a longer tolling period. *See* 28 U.S.C. § 1367(d); *Artis v. District of Columbia*, 583 U.S. 71, 74–75 (2018).

III.  CONCLUSION

For the foregoing reasons, the court will grant Carter's motion for leave to file an amended complaint and his motion for extension of time requesting that the proposed amended complaint be filed as the operative pleading. The federal claims asserted in the amended complaint will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim, and the remaining claims under state law will be dismissed without prejudice under 28 U.S.C. § 1367(c). In light of the court's rulings, the defendants' motion to dismiss the original complaint will be denied as moot. An appropriate order will be entered.

Entered: August 22, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge